**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GRAEBYRD VENTURES, LLC,** | § | |
| | § | |
| Plaintiff, | § | **CIVIL ACTION NO. 4:26-cv-03062** |
| | § | |
| v. | § | |
| | § | |
| **KARIE BOGART AND** | § | |
| **MELANGE PAINTS, LLC** | § | |
| **(n/k/a LEGACY PAINTS, LLC),** | § | |
| | § | |
| Defendants. | § | |

**[PROPOSED] STIPULATED PROTOCOL FOR**
**ELECTRONIC DISCOVERY**

Plaintiff Graebyrd Ventures, LLC ("Plaintiff" or "Graebyrd") and Defendants Karie Bogart ("Bogart") and Melange Paints, LLC (n/k/a Legacy Paints, LLC) (the "Kansas Entity," and together with Bogart, "Defendants"; Plaintiff and Defendants together, the "Parties"), by and through their respective counsel of record, hereby stipulate and agree, subject to the approval of the Court, to the following protocol governing the production of Documents and electronically stored information (the "ESI Protocol"). This ESI Protocol is submitted pursuant to Federal Rules of Civil Procedure 1, 16(b), 26, and 34, and in furtherance of the Court's Order for Scheduling Conference and Disclosure of Interested Parties (Dkt. 3), which directs the Parties to address the disclosure and discovery of electronically stored information.

**IT IS HEREBY STIPULATED AND AGREED, and, upon entry by the Court, ORDERED, as follows:**

**1. Reservation of Rights; No Waiver.**

Defendants have filed, and there remain pending, the following motions: (i) Defendants' Joint Rule 12(b)(1) Motion to Dismiss for Lack of Standing (Dkt. 7); (ii) Defendants' Motion to Dismiss under Rule 12(b)(6) and Rule 9(b) and, Alternatively, Motion for a More Definite Statement under Rule 12(e) (Dkt. 8); (iii) Defendants' Joint Rule 12(b)(7) Motion to Dismiss for Failure to Join Necessary and Indispensable Parties (Dkt. 9); and (iv) Legacy Paints, LLC's Motion to Dismiss under Rules 12(b)(2) and 12(b)(3) and, Alternatively, Motion to Transfer Venue under 28 U.S.C. § 1404(a) (Dkt. 10) (collectively, the "Threshold Motions"). The Parties' negotiation, execution, and submission of, and compliance with, this ESI Protocol are without prejudice to, and shall not constitute or be deemed a waiver of, any of the following:

(a) any of the Threshold Motions, or any argument, defense, or relief sought therein;

(b) any objection to, or defense based upon, the Court's personal jurisdiction over either Defendant, the propriety or convenience of venue in this District, or the request to transfer

this Action to the United States District Court for the District of Kansas; nor shall any Party's participation in this ESI Protocol constitute a general appearance by, or consent to the jurisdiction of this Court by, any Defendant;

(c) any objection to the relevance, materiality, discoverability, proportionality, admissibility, authenticity, or confidentiality of any Document, ESI, or information, all of which objections are expressly preserved;

(d) any position that any Document, ESI, or information does or does not constitute a trade secret, "Confidential Information," or other protected or proprietary material under any statute, agreement, or common-law doctrine; the designation or treatment of material under this ESI Protocol or the Protective Order is not, and shall not be construed as, a concession that such material is protectable, is a trade secret, or was disclosed under any agreement; and

(e) any Party's right to seek, oppose, or rely upon a stay, phasing, sequencing, or other limitation of discovery, including pending resolution of the Threshold Motions (see Dkt. 7 and Dkt. 9).

Nothing in this ESI Protocol commences, accelerates, expands, or otherwise alters the timing or sequence of any Party's discovery obligations, which are and shall remain governed by the Federal Rules of Civil Procedure, the Court's scheduling order(s), and any order staying or limiting discovery. This ESI Protocol governs only the form and manner of production of Documents and ESI if, when, and to the extent discovery proceeds, and imposes no independent obligation to search for, collect, review, or produce any Document or ESI.

## 2. Definitions.

(a) "Action" means the above-captioned lawsuit, Graebyrd Ventures, LLC v. Karie Bogart and Melange Paints, LLC (n/k/a Legacy Paints, LLC), Civil Action No. 4:26-cv-03062, pending in the United States District Court for the Southern District of Texas, Houston Division.

(b) "Court" means the United States District Court for the Southern District of Texas, Houston Division, including any district judge or magistrate judge to whom this Action or any matter herein is assigned or referred.

(c) "Document" shall have the meaning contemplated by Federal Rule of Civil Procedure 34(a)(1)(A) and Federal Rule of Evidence 1001.

(d) "ESI" is an abbreviation of "electronically stored information" and shall have the same meaning and scope as in Federal Rule of Civil Procedure 34(a)(1)(A).

(e) "Metadata" means structured information about a Document or file that is created by, embedded within, or associated with the file, including the fields described in Paragraph 8(a)(iv).

(f) "Native Format" means the format of ESI in which it was generated, maintained, or used by the custodian or source in the ordinary course of business.

(g) "Static Image" means a static representation of a Document created by converting a native file into a standard image format, namely single-page Group IV TIFF for black-and-white images and JPG for color images.

(h) "Load File" means an electronic file that identifies a set of produced images and associated Documents and correlates the images, extracted or OCR text, and Metadata (for example, Concordance .DAT and Opticon .OPT files, or a comparable Relativity-compatible load file).

(i) "Producing Party" means any Party or non-party that produces information, Documents, or ESI in this Action.

(j) "Receiving Party" means any Party that receives information, Documents, or ESI produced in this Action.

(k) "Protective Order" means the Stipulated Protective Order entered, or to be entered, by the Court in this Action.

**3. Scope.**

The procedures set forth in this ESI Protocol shall govern the search for, disclosure, and format of Documents and ESI produced for use in this Action. This ESI Protocol does not define the scope of production, nor the relevance, discoverability, or admissibility of any particular information. Nothing in this ESI Protocol establishes any agreement as to either the temporal or subject-matter scope of discovery in this Action, all of which remains subject to Federal Rule of Civil Procedure 26(b)(1), including its proportionality requirements, and to the limitations of Rule 26(b)(2)(B) and (C). No provision of this ESI Protocol waives any objection to the production, discoverability, admissibility, or confidentiality of Documents and ESI, or any right or protection under Federal Rules of Civil Procedure 26(b)(5), 26(c), or 26(g).

**4. Authority; Proportionality; Cooperation.**

This ESI Protocol is adopted pursuant to Federal Rules of Civil Procedure 16(b) and 26(f) and is intended to secure the just, speedy, and inexpensive determination of this Action, consistent with Federal Rule of Civil Procedure 1. All preservation, search, collection, and production of Documents and ESI shall be subject to the proportionality factors of Federal Rule of Civil Procedure 26(b)(1) and the limitations of Rule 26(b)(2)(B) and (C). The Parties and their counsel shall cooperate in good faith and shall endeavor to resolve disputes regarding the disclosure and production of Documents and ESI without the need for Court intervention. To the extent additional obligations arise under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Texas, or the Court's procedures, they shall supplement this ESI Protocol; to the extent this ESI Protocol conflicts with an order of the Court, the order of the Court shall control.

**5. Preservation of Documents and ESI.**

(a) Each Party has an independent obligation to take reasonable and proportionate steps to preserve relevant, non-privileged Documents and ESI within its possession, custody, or control. This ESI Protocol neither enlarges nor diminishes that obligation, and nothing herein shall be construed as a representation or agreement that any particular source of Documents or ESI does or does not contain discoverable information.

(b) Consistent with Federal Rule of Civil Procedure 26(b)(1) and (b)(2)(B), and absent a specific showing of good cause and particularized relevance, the Parties shall not be required to preserve, collect, search, restore, review, or produce the following categories of ESI, which the Parties agree are not reasonably accessible, are unlikely to contain unique discoverable information, or would impose burden or cost disproportionate to the needs of the case:

    (i) deleted, slack, fragmented, or unallocated data accessible only through forensic recovery;

    (ii) random access memory (RAM), temporary files, cache files, or other ephemeral data not ordinarily retained;

    (iii) on-line access data such as temporary internet files, history, cache, and cookies;

    (iv) data in metadata fields that are frequently updated automatically, such as last-opened dates;

    (v) back-up media or systems created solely for disaster-recovery purposes and not relied upon for ordinary-course information retrieval, and back-up data substantially duplicative of data more accessible elsewhere;

    (vi) voicemail, instant messages, and other ephemeral communications not ordinarily retained in the regular course of business, except as the Parties may otherwise agree or the Court may order;

    (vii) server, system, and network logs, and structured data residing in databases that is reasonably available in a more usable reporting format; and

    (viii) electronic data temporarily stored by laboratory equipment, printers, copiers, scanners, or other devices not ordinarily preserved.

(c) **Sources Not Reasonably Accessible.** A Party need not provide discovery of ESI from sources that the Party identifies as not reasonably accessible because of undue burden or cost, consistent with Federal Rule of Civil Procedure 26(b)(2)(B). If a Party withholds discovery of ESI on this basis, it shall, upon request, identify by category or type the sources withheld, and the Parties shall meet and confer in good faith before any Party seeks relief from the Court.

## 6. Dispute Resolution Process for ESI Matters.

(a) **Meet and Confer.** Before filing any motion or request for relief relating to this ESI Protocol or to the disclosure or production of Documents and ESI, the Parties shall meet and confer in good faith in an attempt to resolve the dispute, consistent with Federal Rule of Civil Procedure 37(a)(1), the Local Rules, and the Court's procedures. The meet-and-confer may be conducted by telephone or videoconference and shall include counsel with authority to resolve the dispute.

(b) **Initiation and Timing.** The Party seeking relief shall initiate the meet-and-confer process by sending opposing counsel a written description of the dispute. The Parties shall meet and confer within seven (7) business days of the request, unless they agree to a different schedule.

(c) **Pre-Motion Conference; Knowledgeable Personnel.** Consistent with the Court's procedures, before filing any discovery motion the Parties shall request a pre-motion conference with the Court. When a dispute concerns the discovery of electronic data, each Party shall have available at any such conference a person with detailed knowledge of the computer systems and electronic databases at issue, as contemplated by the Court's Order for Scheduling Conference (Dkt. 3).

(d) **Certification.** Any motion or request to the Court regarding a dispute under this ESI Protocol shall be accompanied by the certification required by Federal Rule of Civil Procedure 37(a)(1) and the Local Rules, summarizing the meet-and-confer efforts, the positions of each Party, and any areas of agreement.

(e) **Cooperation.** The Parties shall cooperate in good faith to resolve disputes efficiently and to minimize cost. Nothing in this Paragraph limits any Party's right to seek a protective order under Federal Rule of Civil Procedure 26(c), or to seek a stay or other limitation of discovery.

## 7. Treatment of Materials Subject to Third-Party Confidentiality Obligations.

Documents or ESI that are subject to contractual or legal confidentiality obligations owed to third parties, including without limitation obligations arising under nondisclosure agreements, supplier or customer confidentiality provisions, or protective orders entered in other proceedings, shall not be produced without:

(a) the written consent of the affected third party; or

(b) an order of the Court entered after notice to the affected third party and an opportunity to be heard.

If a Producing Party identifies Documents that may be subject to third-party confidentiality restrictions, the Producing Party shall: (i) notify the Receiving Party in writing of the existence of such materials and the general nature of the restriction; (ii) provide the Receiving Party with a log identifying the materials by category, without disclosing the confidential information itself; (iii) meet and confer with the Receiving Party regarding whether the information is necessary and whether alternative sources exist; and (iv) if the Parties cannot resolve the issue, seek a ruling from the Court.

The Producing Party shall make reasonable efforts to obtain third-party consent where feasible but shall not be required to breach a contractual confidentiality obligation. If the Court orders production of materials subject to third-party confidentiality restrictions, such materials shall be subject to the protections of the Protective Order, including any heightened protections applicable to material designated Highly Confidential – Attorneys' Eyes Only.

## 8. Format of Production.

(a) **Specifications.** Documents stored in electronic or hard-copy form in the ordinary course of business shall be produced in the following format, provided that such copies are true, correct, and complete copies of the originals:

(i) Spreadsheet, database, and presentation files (for example, Microsoft Excel, Access, and PowerPoint) shall be produced in Native Format with extracted text and Metadata,

except where such files are redacted. The Producing Party may instead produce such a file in Static Image (TIFF or PDF) format if: (A) the file contains information that cannot be adequately redacted in Native Format; (B) production in Native Format would reveal embedded formulas, hidden data, or other information beyond what is reasonably required; or (C) the Receiving Party agrees to accept a non-native format. The Producing Party shall provide written notice of any election to produce in non-native format and the reason therefor. Native files shall be produced with a Bates-numbered slipsheet and corresponding Metadata.

(ii) All other Documents shall be produced as single-page Group IV black-and-white TIFF images, with color images produced as JPG, accompanied by Document-level extracted text or OCR and the Metadata set forth below, together with industry-standard image and data Load Files.

(iii) OCR shall be provided for Documents that do not contain extractable text, and extracted text shall be provided for Documents that do. The Producing Party shall produce color images, or the native file, upon a reasonable showing that color is necessary to interpret the Document.

(iv) Reasonably available Metadata shall be produced, including the following fields to the extent they exist and can be extracted without undue burden:

| Field | Description |
| --- | --- |
| BegBates / DOC_BEG_BATES / DOC_ID | Beginning Bates number |
| EndBates / DOC_END_BATES | Ending Bates number |
| BegAttach / FAM_BEG_BATES / FAMILY_ID | Beginning Bates number of the parent record in a family |
| EndAttach / FAM_END_BATES | Ending Bates number of the last record in a family |
| AttachRange | Bates range of the family (parent begin to last child end) |
| Attachments / ATTACH_IDS | Beginning Bates value of each child (populated in parent record) |
| NumAttach / ATTACH_FILE_COUNT | Number of child records in a family (populated in parent record) |
| ParentID / PARENT_ID | Parent record's beginning Bates value (populated in child record) |
| Custodian / CUSTODIAN / SOURCE | Custodian or source from which the Document was collected |
| Original Folder Path / NATIVE_PATH | File path to the native file as it existed in the original environment |
| From / FROM | Author of the email or calendar item |
| To / TO | Recipients of the email |
| CC / CC | Persons copied on the email |
| BCC / BCC | Persons blind-copied on the email |
| Author / AUTHOR | Author value extracted from the metadata of a native file |

| Field | Description |
|---|---|
| Title / TITLE | Title value extracted from the metadata of a native file |
| Subject / SUBJECT | Subject value extracted from the metadata of a native file, or email/calendar subject |
| Conversation Index / EMAIL_MESSAGE_ID | Email thread identification |
| Date Created / CREATED_DATE | Date and time the electronic file was created |
| Date Last Modified / LAST_MODIFIED_DATE | Date and time the electronic file was last modified |
| Date Sent / SENT_DATE | Date and time the email was sent |
| Date Received / RECV_DATE | Date and time the email was received |
| Pages / PAGE_COUNT | Page count |
| RecordType / FILE_TYPE | E-Doc, E-Doc Attachment, Email, Email Attachment, Hard Copy, etc. |
| Document Extension / FILE_EXTENSION_ORIGINAL | File extension of the native file |
| File Name / FILE_NAME | File name of the native file |
| Headers / EMAIL_HEADER | Internet header information for email |
| MD5 Hash / MD5_HASH | Document MD5 hash value (used for de-duplication) |
| Text Precedence / TEXT_PATH | File path to the extracted-text or OCR file in the delivery |
| Native Path / NATIVE_PATH | File path to the produced native file in the delivery |

Redacted Documents shall be produced in Static Image (TIFF or PDF) format accompanied by OCR and the Metadata required for the relevant Document type in Paragraph 8(a)(iv), except for Metadata fields that would themselves disclose redacted content.

The Parties may meet and confer to agree on a reduced set of Metadata fields if full production would be unduly burdensome. Any dispute regarding the scope of Metadata production shall be resolved by the Court, with costs allocated as the Court deems appropriate.

(b) **Global De-Duplication.** Removal of duplicate Documents shall be performed only as to exact duplicates based on MD5 hash values. Attachments shall not be eliminated as duplicates unless the parent email and all attachments are also duplicates. The Parties agree that the production of ESI globally de-duplicated in accordance with this ESI Protocol shall constitute production of ESI as maintained in the ordinary course of business.

(c) **Email Thread Suppression.** An email thread is a series of email communications that contains prior or lesser-included email communications. A most-inclusive email thread is one that contains all prior or lesser-included emails and attachments, including each branch of the thread. A Producing Party may use email thread suppression to exclude lesser-included emails from production, provided that an email containing an attachment, or content in the BCC or other blind-copy field, shall not be treated as a lesser-included version of an email that does not include that attachment or content, even if all remaining content is identical. However, email thread suppression shall not be used to exclude emails where:

(i) the lesser-included email contains substantive content not present in the most-inclusive email (including in the To, From, CC, or BCC fields);

(ii) the lesser-included email was sent to or from different recipients than the most-inclusive email, where such different recipients are potentially relevant to the issues in the Action;

(iii) the lesser-included email contains different or additional attachments;

(iv) the time gap between the lesser-included email and the most-inclusive email exceeds thirty (30) days; or

(v) the lesser-included email is responsive to a specific document request to which the most-inclusive email would not be responsive.

The Parties shall meet and confer regarding the specific tool and parameters used for email thread suppression before it is applied. At the request of the Receiving Party, the Producing Party shall provide a log of emails excluded by thread suppression, identifying the Bates number of the most-inclusive email produced and the date and subject of the suppressed emails; the Receiving Party may request production of specific suppressed emails upon a showing of good cause. If the Parties cannot agree, the Court shall determine the appropriate parameters.

(d) **Unitization.** In scanning hard-copy Documents, distinct Documents shall not be merged into a single record, and a single Document shall not be split into multiple records. The Producing Party shall take reasonable steps to physically and logically unitize hard-copy Documents in a manner consistent with how they were maintained in the ordinary course.

(e) **Password-Protected or Encrypted Files.** The Producing Party shall make reasonable efforts to process for review and production any encrypted or password-protected Document that meets production criteria, and to produce the decrypted Document if responsive and not privileged. If such a Document cannot be successfully processed, the Producing Party shall: (i) produce a slipsheet indicating that the Document cannot be decrypted; and (ii) provide the Metadata for the Document to the extent it can be reasonably extracted. Notwithstanding the foregoing, if such a file contains information subject to the third-party confidentiality limitations described in Paragraph 7, the Producing Party may withhold the file in accordance with the procedures in Paragraph 7 and shall so note on the log or slipsheet.

(f) **Embedded Objects, Hidden Content, and Tracked Changes.** The Parties shall take reasonable steps to preserve and produce embedded files, comments, speaker notes, tracked changes, and hidden content, to the extent reasonably accessible and not privileged. Embedded files may be produced as separate records or in Native Format. The Parties shall meet and confer regarding the treatment of any such content that cannot be produced without undue burden.

(g) **Structured Data and Databases.** Where responsive information is maintained in a structured database or similar system, the Producing Party may produce that information as a reasonably usable report or export (for example, a delimited file) rather than producing the underlying database or application. The Parties shall meet and confer regarding the fields, format, and scope of any such production.

(h) **Mobile-Device, Text, and Chat Data.** Text messages, chat messages, and other short-message or messaging-application data shall be produced, to the extent responsive, proportional, and reasonably accessible, in a reasonably usable form (for example, as Static Images or as a delimited or PDF transcript) that preserves, where reasonably available, the participants, date, time, and content of each message and reflects the conversational sequence. The Parties shall, where practicable, meet and confer regarding the sources, scope, and format of any such production before collection.

(i) **Social-Media and Online-Account Data.** Responsive content from social-media accounts, e-commerce storefronts, and similar online accounts shall be produced, to the extent responsive, proportional, and reasonably accessible, in a reasonably usable form, such as a native export or report generated by the platform, or as Static Images with available Metadata. The Parties shall meet and confer regarding the appropriate scope, sources, date ranges, and format of any such production. Nothing in this subparagraph is a concession that any such content is relevant, discoverable, or within any Party's possession, custody, or control.

(j) **Hard-Copy Documents.** Documents existing only in hard-copy form shall be scanned and produced as Static Images with OCR, shall be logically and physically unitized in a manner consistent with how they were maintained in the ordinary course, and shall identify the custodian or source.

(k) **Production Media.** Productions shall be delivered on readily accessible electronic media or by secure electronic transfer, encrypted or password-protected as appropriate, with passwords transmitted separately. Each production shall be accompanied by a cover letter identifying the Bates range and confidentiality designations.

(l) **Bates Numbering and Endorsements.** Each page of a produced Static Image shall bear a unique, consistent Bates number and any applicable confidentiality legend. The Producing Party shall not allow such endorsements to obscure Document content. Native files shall be identified by a Bates-numbered slipsheet and corresponding Metadata field.

**9. Claims of Privilege; Privilege Logs.**

(a) In an effort to avoid the unnecessary expense and burden associated with traditional document-by-document privilege logs, the Parties agree that, for Documents withheld from production on the basis of the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection, the Producing Party will prepare a summary log containing, for each withheld Document (except those exempted below), an export of all or a subset of the Metadata fields listed below (as agreed by the Parties), to the extent such information exists and has not been suppressed or redacted for privilege. The export shall include, at a minimum, the following information, from the top-line email and from any attachment, in separate entries:

(i) BegBates (or BegNo, if not produced), or DOC_BEG_BATES and/or DOC_ID, as applicable;

(ii) EndBates (or EndNo, if not produced), or DOC_END_BATES, as applicable;

(iii) Custodian(s), or CUSTODIAN and/or SOURCE, as applicable;

(iv)From;

(v) To;

(vi)CC;

(vii)   BCC;

(viii)   Subject;

(ix)SentDate or SENT_DATE;

(x) FileName or FILE_NAME;

(xi)FileExt or FILE_EXTENSION_ORIGINAL;

(xii)   Author; and

(xiii)   CreatedDate or CREATED_DATE.

(b) The Parties may meet and confer to agree on additional Metadata fields if reasonably necessary, or to further limit fields if production would be unduly burdensome.

(c) In addition to the fields described in Paragraph 9(a), the Producing Party shall provide, for each Document on the summary log, two additional fields: (i) the subject matter of the Document; and (ii) the basis of the privilege or protection claimed. The Producing Party shall also produce, with any summary log, a list of all counsel identified in the log.

(d) **Limitation on Metadata Disclosure.** If providing any Metadata field would itself reveal privileged or protected information (such as a subject line that discloses legal advice, mental impressions, or strategy), the Producing Party may: (i) redact such Metadata and note the redaction on the log as "REDACTED – PRIVILEGED"; or (ii) provide a more general description that conveys the nature of the Document without revealing privileged content (for example, in place of "Subject: litigation strategy for damages calculation," provide "Subject: [legal advice regarding this Action]"). The Receiving Party may challenge any such redaction or generalized description through the procedure set forth in the Protective Order.

(e) The Parties agree that the following privileged or otherwise protected communications and materials may be excluded from any privilege log:

(i) any Document, communication, or work product created, sent, or received solely among or within a Party's outside counsel, or persons employed or retained by such counsel, relating solely to this Action and dated on or after the filing of the Complaint;

(ii) communications to or from a Party's in-house counsel relating solely to this Action and dated on or after the filing of the Complaint;

(iii)communications between a Party and its outside counsel relating solely to this Action and dated on or after the filing of the Complaint;

(iv)non-responsive privileged Documents attached to responsive Documents, provided that the Producing Party inserts a placeholder indicating that a Document has been withheld from the family;

(v) draft pleadings, motions, briefs, discovery requests and responses, declarations, and other litigation work product prepared for this Action; and

(vi) communications with a Party's testifying or consulting experts to the extent protected under Federal Rule of Civil Procedure 26(b)(4).

**10. Redaction.**

(a) A Party may redact Documents or ESI on the following bases: (i) the attorney-client privilege; (ii) the work-product doctrine; (iii) any other applicable legal privilege or protection; (iv) personally identifying or sensitive personal information, such as Social Security numbers, financial-account numbers, dates of birth, and similar data; and (v) information subject to third-party confidentiality restrictions as described in Paragraph 7.

(b) **Confidential Business Information.** Documents containing confidential, proprietary, trade-secret, or commercially sensitive business information that does not fall within Paragraph 10(a) shall be produced in full but may be designated Confidential or Highly Confidential – Attorneys' Eyes Only under the Protective Order. Such information shall be protected through confidentiality designations rather than redaction, except as the Court may otherwise order.

(c) **Format and Logging.** Documents redacted on any basis in Paragraph 10(a) shall: (i) be produced in Static Image (TIFF or PDF) format with the redactions burned in; (ii) clearly indicate that a redaction has been made and the basis for each redaction; and (iii) otherwise be produced with the Metadata required by Paragraph 8, except for Metadata that would itself disclose redacted content.

(d) **Challenges.** The Receiving Party may challenge any redaction through the procedure set forth in the Protective Order.

**11. Privilege Non-Waiver under Federal Rule of Evidence 502(d); Inadvertent Production.**

(a) **Order Under Rule 502(d).** Pursuant to Federal Rule of Evidence 502(d), the production of any Document, ESI, or information in this Action, whether inadvertent or otherwise, shall not constitute or be deemed a waiver or forfeiture of any claim of attorney-client privilege, work-product protection, or any other applicable privilege or protection that the Producing Party would otherwise be entitled to assert as to the produced material or its subject matter, in this Action or in any other federal or state proceeding. This provision shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing in this provision limits the protections available under Federal Rule of Evidence 502(b).

(b) **Clawback Procedure.** Nothing in this ESI Protocol shall prohibit a Producing Party from seeking the return of any inadvertently or unintentionally produced privileged, work-product, or otherwise protected material. When a Producing Party gives notice that it has produced such material (a "Clawback Notice"), or the Receiving Party discovers what may be an inadvertent production, the production shall not be deemed a waiver. If the Receiving Party discovers a potential inadvertent production, it shall notify the Producing Party within seven (7) business days of discovery. Upon receipt of a Clawback Notice, the Receiving Party shall, within seven (7) business days, return, sequester, or destroy all

copies of the identified material and shall not use or disclose it for any purpose until any dispute is resolved, except that the Receiving Party may retain a single sequestered copy solely for the purpose of presenting a challenge to the Court. The Receiving Party may challenge the claim of privilege or protection by motion presented to the Court, with the material submitted under seal for in camera review, but shall not assert as a ground for any such challenge the fact or circumstances of the production itself, consistent with Federal Rule of Evidence 502(b) and Federal Rule of Civil Procedure 26(b)(5)(B).

## 12. Cost Allocation.

(a) Except as otherwise ordered by the Court or agreed by the Parties, each Party shall bear its own costs of preserving, searching for, reviewing, and producing Documents and ESI.

(b) If a Receiving Party requests production in a format or with specifications that impose an unreasonable burden or expense on the Producing Party beyond what this ESI Protocol requires, the Court may allocate the resulting costs between the Parties as appropriate under Federal Rule of Civil Procedure 26(b)(1), (b)(2)(B), and (c).

(c) Costs of third-party vendors, hosting platforms, or other services used for a production shall be borne by the Party incurring them, unless otherwise agreed or ordered.

## 13. Amendment.

Nothing herein shall preclude a Party from seeking to amend or modify this ESI Protocol, provided that the Parties first meet and confer in good faith before any Party seeks relief from the Court. The Parties recognize that the course of discovery, including the identification of custodians, sources, and search methodologies, may warrant modification of this ESI Protocol.

## 14. Relationship to Stipulated Protective Order.

This ESI Protocol and the Protective Order are companion orders that together govern the production, handling, and protection of Documents and ESI in this Action. To the extent any provision of this ESI Protocol conflicts with the Protective Order:

(a) the Protective Order shall control as to the confidentiality, designation, handling, and use of information; and

(b) this ESI Protocol shall control as to the technical format of production, Metadata, and Document processing.

If a conflict cannot be resolved by application of subsections (a) and (b), the Parties shall meet and confer to resolve it and, if unable to agree, shall seek clarification from the Court. The Parties intend that the two orders be read together as an integrated framework for discovery in this Action.

## 15. Miscellaneous.

(a) **Non-Parties.** The Parties shall provide a copy of this ESI Protocol to any non-party from whom they seek production of Documents or ESI and shall request that the non-party comply with its terms to the extent practicable.

(b) **No Effect on Timing.** Nothing in this ESI Protocol addresses or alters the timing, sequence, or commencement of discovery, which remains subject to the Federal Rules of Civil Procedure, the Court's scheduling order(s), and any order staying or limiting discovery.

(c) **Counterparts; Authority.** This ESI Protocol may be executed in counterparts, including by electronic signature, each of which shall be deemed an original. Each signatory represents that he or she is authorized to execute this ESI Protocol on behalf of the Party indicated.

**IT IS SO STIPULATED AND AGREED.**

**LEAVITT AND ELDREDGE LAW FIRM**    **HENDERSHOT COWART P.C.**

By: _/Brandon J. Leavitt/_____    By: _/Philip D. Racusin/ (by permission)__
Brandon James Leavitt    Simon W. Hendershot, III
Texas Bar No. 24078841    State Bar No. 09417200
S.D. Tex. Bar No. 3070683    trey@hchlawyers.com
brandon@uslawpros.com    Philip D. Racusin
4204 S.W. Green Oaks Blvd., Suite 140    State Bar No. 24054267
Arlington, Texas 76017    pracusin@hchlawyers.com
Telephone: (214) 727-2055    Sarah C. Caton
    State Bar No. 24133625
**ATTORNEY-IN-CHARGE FOR**    scaton@hchlawyers.com
**PLAINTIFF**    1800 Bering Drive, Suite 600
**GRAEBYRD VENTURES, LLC**    Houston, Texas 77057
    Telephone: (713) 783-3110
    Facsimile: (713) 783-2809

    **ATTORNEYS FOR DEFENDANTS**

**IT IS SO ORDERED.**

Signed this _____ day of _____, 2026.

_____
NICHOLAS J. GANJEI
UNITED STATES DISTRICT JUDGE